Buefin, J.
 

 The only question is, whether, after payments by the testator, expressly in satisfaction of a pecuniar}’-legacy, a second payment can be enforced from the executor. It would seem strange if it could, for, it would not be more di
 
 *195
 
 reetly contrary to the intention of the testator than to right and justice. The delivery by the testator to the legatee, of a specific thing bequeathed, has always been held to a be a satisfaction or ademption of the legacy. Although the tenor of the will stands, yet the gift is ineffectual, because the legatee, having got the thing intended for him, cannot get it again. In that respect it must be the same with the pecuniary legacy. Express anticipated payment by the testator, must exclude a claim for a second payment of the same sum, since the testator intended but one gift, and that he completed in his his life-time. To say the contrary, amounts to this : that nothing but revocation can work an ademption or satisfaction, and that the whole law, on those heads is abrogated. It was contended, at the bar, that such is the case, by force of the act of 1844; which provides, that no conveyance or act, subsequent to the execution of a will, of real or personal estate, except revocation, shall prevent the operation of the will, with respect to such estate or interest, as the testator shall have power to dispose of by will at the time of his death; and also that a will shall be construed, in respect to the real and personal estate comprised in it, to speak and take effect, as if it had been executed immediately before the death of the testator, unless a contrary intention appear in the will. But the act cannot be received in a sense, which sweeps away such important heads of equity and leaves a satisfied legacy in force, when, apparently, it was passed
 
 diverso
 
 intuitu, and, as far as can be discovered, this case was not in the contemplation of the Legislature. The Court has already held, in
 
 Robbins v. Windly,
 
 3 Jones’ Eq. 286, that the third section could not be construed so as, under color of the doctrine of election, to defeat an intention of the testator to adeem a legacy. Both the sections were, in truth, meant not merely to establish uniformity in the construction of wills, but as provisions in aid of the intentions of testators by giving effect to wills so as to pass after-acquired lands, and also to operate on estates or interests which did not remain in the same state at the death of the testator, in which they were at the making of the willas if
 
 *196
 
 the testator took a conveyance for lands he had contracted for at the date of the will, or mortgaged his estate, or renewed a term, and the like. Cases of that character give scope to the act which carries out the intention of the testator in a great majority of instances. But the ademption or satisfaction of legacies is founded on a doctrine of natural as well as artificial equity against double payments of one bounty. And the abrogations of that principle -would not only not aid in eflectuaing the intention of testators, but, in almost every case, would defeat the intention. If a will say on its face, after giving a pecuniary legacy, that if the testator should pay it in his lifetime, it shall not be paid again by his executors, surely, the fact, and the intention of a payment by the testator, may be shown in satisfaction ; and that, although the will is, in general, to speak as of the moment of his death, and thus, apparently, would exclude the possibility of prepayment of a legacy given in that moment. It is in the nature of a conditional legacy. So, indeed, are all legacies in respect to this point of satisfaction, upon the principle of equity forbidding two satisfactions. Then the act, and the intention, when express, of a payment by the testator is here, as clear a satisfaction of the legacy as in the supposed provision in the will itself.
 

 Again, it has been settled, that republication makes a will speak from that time, and that a codicil, referring to the will, amounts to republication ; so that case is just the same, in principle, as ours is, under the provision in the statute, that it shall speak from the death of the testator. Yet, in
 
 Powys
 
 v. Mansfield, 3 Myl. and Craig, 359, though there had been some difference between Lord Habdwicice and Lord Thurlow on the point, Lord Cottingiiam said, as the result of all the authorities that, although republication would make a will speak from that time, for the purpose of passing after-purchased lands, it would not, for the purpose of reviving a legacy revoked, adeemed, or satisfied. He supposes a legacy, in the will, to be revoked by a codicil, and then a second codicil made, by w'hich the will is republished and made to speak from the last codicil, and says, that would not set up the leg
 
 *197
 
 acy against the previous express revocation. He adds, that' republication does not undo the acts by which a legacy has been adeemed or satisfied, but only acts upon the will as it existed at the time of the republication, when, in the view of the Chancellor, the legacy revoked, adeemed, or satisfied, formed no part of the will; that is, as it is to be understood, no part of it which is still to be carried into execution. In other words, the legacy stands in the will; but it stands there as a satisfied legacy.
 

 The same reasoning is precisely applicable to those parts of our statute, which touch the operation of wills, and the time to which their operation is to be referred, and the bill must be dismissed with costs.
 

 Per Curiam, Decree accordingly.